IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARCUS L. WALLACE,** individually situated, | : | **CIVIL NO. 1:12-CV-0872** |
| Plaintiff | : | |
| v. | : | |
| **MEDIANEWS GROUP, INC.,** | : | |
| Defendant | : | |

# M E M O R A N D U M

## I.    Procedural History

Marcus Wallace (Wallace) filed a civil rights complaint (Doc. 1) on May 10, 2012 pursuant to 42 U.S.C. § 1983. A standing practice order was issued on May 10, 2012 (Doc. 3) and a thirty-day administrative order was issued on May 11, 2012 (Doc. 4). On June 25, 2012, Wallace filed a motion to amend, which this court determined to be a motion to amend the caption of the complaint. The complaint was ordered to be served upon Defendant MediaNews Group, Inc. ("MNG") on June 25, 2012. On July 18, 2012, MNG filed a motion to dismiss. The motion is now ripe for consideration and, for the reasons stated below, the complaint will be dismissed for failure to state a cause of action.

## II.    Background

MNG owns a Chambersburg, Pennsylvania newspaper named the *Public Opinion*. Wallace is an inmate in the Franklin County Jail charged with the slaying of his then 70-year old mother. The *Public Opinion* extensively covered Wallace's first-degree murder case that included front page articles about the facts of

the brutal murder; carried his mug shot; printed his multiple mental health evaluations, and published the fact that, if convicted, he faced the death penalty. Wallace does not challenge the veracity of the news coverage of his criminal charges.

On March 10, 2012, the *Pubic Opinion* published an article titled "Water Boy, You're Fired." (Doc. 1, Ex. E.) That outburst made in court by Jeffrey Miles, a defendant in another murder case. The article explained that "Miles, 48, State Line, is charged with criminal homicide for allegedly killing Kristy Dawn Hoke." (Doc. 1, Ex. L.) The article was accompanied by a photograph captioned "Miles." The photograph, however, was that of Wallace.

Wallace claims that the publication of his mug shot implied that he is "Jeffrey Miles" and therefore committed the crime of killing Kristy Hoke." (Doc. 1, ¶ 10.) Wallace claims the article "tends to lower plaintiff in the estimation of persons in Franklin County area." (Doc. 1, ¶ 22.)

### III.      Requirements of a Complaint

Wallace's complaint sets forth the following claims: (1) defamation; (2) false light invasion of privacy; (3) misappropriation of likeness; (4) publication of private facts; (5) intrusion of seclusion; (6) intentional infliction of emotional distress; (7) intentional tort; and (8) identity theft.  The court must assess whether a *pro se* complaint fails to state a claim upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic corp. v. Twombly*, 550 U.S. 544 (2007) continuing with our opinion in *Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 12350, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

3

In keeping with the principles of *Twombly*, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

Thus, following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit stated:

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint

4

> must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Fowler*, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis.

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 129 S.Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

*Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010).

## IV.     Discussion

### A. Defamation Claim

Under Pennsylvania law, a defamation plaintiff has the burden to prove: (1) the defamatory character of the communication; (2) the publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; and (5) the understanding by the recipient of it as intended to be applied to the plaintiff. *Tucker v. Fischbein*, 237 F.3d 275, 281 (3d Cir. 2001). The court must decide at the outset whether a statement is capable of defamatory meaning. *Thomas M. Merton Ctr. v. Rockwell Int'l Corp.*, 497 Pa. 460 (Pa. 1981). It is also for the court to "decide whether the defamatory material is intended to refer to [the plaintiff]." *Darling v. Piniella*, 1991 WL 193524 at *2 (E.D. Pa., Sept. 27, 1991) (citations omitted). "A party defamed need not be specifically named, if pointed to by description or circumstances tending to identify [him]." *Cosgrove Studio v. Pane*, 408 Pa. 314, 319 (1962) (citations omitted). In Pennsylvania, a

statement is defamatory "if it tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 442 (1971). Thus, this court will address Plaintiff's claims in accordance with the above standards to determine if the article at issue is defamatory.

Prior to the Public Opinion article of March 10, 2012, the newspaper reported extensively on Wallace's own murder case; the potential of his receiving the death penalty; his mental health evaluations; his outbursts in court; his accusations against his counsel; and his name, age, and residence location. Wallace's mug shot appeared in articles pertaining to him. In fact, Wallace sought a change of venue in his case, claiming that the news coverage of his case has "influenced and swayed the minds of the public." (Doc. 21-1, Ex. 15 at ¶¶ 18, 24.) Wallace claims this coverage has prejudiced him in the eyes of the public. (Doc. 21-1, Ex. 16.) The article of March 10, 2012 concerned a different murder case, that of one Kristy Dawn Hoke. It identified the defendant as Jeffrey Miles, age 48, of State Line. The article was accompanied by a mug shot of Wallace although the photo was captioned with the name of Miles. Except for the mislabeled mug shot, there is nothing in the article that implicates Wallace with the killing of Kristy Dawn Hoke.

The court notes that the day after the publication of the article in question, the *Public Opinion* published a correction with Miles' mug shot. The correction did not mention Wallace. (Doc. 21-1, Ex. 12.) This correction supports a conclusion that the article using Wallace's mug shot was in error and not done out of malice to Wallace.

6

The court finds that Wallace has not stated a defamation claim. The article is true as to Jeffrey Miles and cannot be reasonably construed or understood as intended to refer to Wallace.

Wallace's claim that the Miles article "lower[ed] plaintiff in the estimation of reasonable people in Franklin County" (Doc. 1 at ¶¶ 11, 13, 22), is no different than the claim presented in his motion for change of venue in his own murder case. (Doc. 21-1, Ex. 15 at ¶¶ 6, 24.) On who by his own actions has so badly damaged his reputation cannot be further injured by an allegedly false statement on another matter. *Istrefi v. Pocono Record Newspaper*, No. 3:02-CV-0987 (M.D. Pa., Feb. 26, 2004). The defamation claim will be dismissed.

**B. Tort Claims**

The Supreme Court of Pennsylvania has adopted Sections 652B through 652E of the Restatement (Second) of Torts which separates invasion of privacy into four distinct torts: (1) intrusion upon seclusion; (2) appropriation of name or likeness; (3) publicity given to private life; and (4) publicly placing person in false light. *Fogel v. Forbes, Inc.*, 500 Fed. Supp. 1081, 1084 (E.D. Pa. 1980). Plaintiff has alleged all of these claims.

1. Intrusion upon seclusion.

A claim for intrusion upon seclusion must meet the following elements: (1) intentional intrusion, (2) upon private concerns, (3) which was substantial and would be highly offensive to a reasonable person, and (4) which caused mental suffering, shame, or humiliation. *Amerex v. Foster*, 2012 US Dist. LEXIS 177074 (W.D. Pa., Dec. 14, 2012). Defendants are not subject to liability for intrusion upon seclusion because Defendant has not invaded a private place. Furthermore, the Miles

7

article reported on a matter of public concern. No claim for intrusion of seclusion has met the elements of such a claim.

2. Appropriation of name or likeness.

To be liable for appropriation of name or likeness under the Restatement (Second) of Torts, "a defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of plaintiff's name or likeness." Restatement (Second) of Torts § 652C cmt. c; *see also AFL v. Krause*, 639 Fed. Supp. 2d 512 (E.D. Pa. 2009). The use of a photo to illustrate a newsworthy article does not state a misappropriation claim. 42 Pa. Cons. Stat. § 8316(2)(ii). Wallace has not alleged that his photo was appropriated for a commercial purpose. Until the value of the photo has in someway been appropriated, there is no tort. This claim fails.

3. Publicity given to private life.

"In order to make out a claim of publicity to private life, a plaintiff must establish that (1) a private fact was (2) publicized and (3) that such fact was of a type highly offensive to a reasonable person and (4) not of legitimate concern to the public. *Sharp v. Whitman Council, Inc.*, 2007 U.S. Dist. LEXIS 73848 (E.D. Pa. 2007), *citing Santello v. Reedel*, 430 Pa. Super. 290, 298 (1993). In this case, there is nothing in the Miles article that cites to anything concerning private facts of Wallace. The article was of legitimate concern to the public. Wallace has failed to meet the elements required to state a cause of action for invasion of privacy by publication or private facts.

4. Publicity placing person in false light.

The elements to be proven for this invasion of privacy claim are (1) publicity given to private facts (2) which would be highly offensive to a reasonable

8

person; (3) which are not of legitimate concern to the public and (4) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. *Rush v. Philadelphia Newspapers, Inc.*, 199 Pa. Super. 141 (1999); *Donnelly v. O'Malley*, 2009 U.S. Dist. LEXIS 92289 (M.D. Pa. 2009); *Larsen v. Philadelphia Newspapers, inc.*, 375 Pa. Super. 66 (1988) (all citations omitted).

In this case, there was no publicity to private facts in the Miles article regarding Wallace; the Miles article was of legitimate public concern, and there are no facts showing that the publication of Wallace's mug shot in the Miles article was done with reckless disregard. As noted above, the following day, the error was corrected by Defendant. This claim also fails.

### C. Emotional Distress Claim

In *Syed v. YWCA of Hanover*, 2012 U.S. Dist. LEXIS 128765 (M.D. Pa. 2012), this court held:

> A claim for intentional infliction of emotional distress is a state tort and is thus governed by Pennsylvania substantive law. To prove such a claim, a plaintiff must establish that the defendant's conduct: (1) was intentional or reckless; (2) was extreme and outrageous; (3) actually caused the distress; and (4) caused distress that was severe. *Regan v. Twp. of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999) (citations omitted). To establish "outrageous conduct" in Pennsylvania, "it has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (quoting Restatement (Second) of Torts § 46, cmt. d (1977); *Dughen v. Fox*, 539 A.2d 858, 861 (Pa. Super. Ct. 1988)); *Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1183 (Pa. Super. Ct. 1989). Instead, the conduct must be "so extreme in nature as to go beyond all possible bounds of decency such that it would be regarded as utterly intolerable to [a]

civilized society." *Mulgrew v. Sears Roebuck & Co.*, 868 F. Supp. 98, 103 (E.D. Pa. 1994).

Wallace cannot satisfy the elements of a claim of intentional infliction of emotional distress. Defendant's publication of the wrong criminal defendant's mug shot in an article about a case of another defendant also charged with murder does not rise to the level of being so extreme as to be "utterly intolerable to civilized society." *Mulgrew v. Sears Roebuck & Co.*, 808 F. Supp. 98, 103 (E.D. Pa. 1994).

Wallace also cannot demonstrate the severe emotional distress necessary to state a claim. Wallace alleges that he has suffered "weightloss [sic], sleeplessness and nausea." (Doc. 1 at ¶16.) Wallace is facing the death penalty for allegedly killing his mother, has undergone psychiatric examinations, and has been subjected to intense media coverage. By weighing these factors against the publication of his mug shot in an article concerning another unrelated murder, it is not plausible that the latter incident caused the severe stress which he claims.

In *Kent v. Fatula*, 2007 WL 2404721 at *22-23 (W.D. Pa., Aug. 17, 2007), the court held that allegations of "embarrassment, humiliation, and loss of sleep" were insufficient to "support an inference that the distress [plaintiff] suffered was the kind of unbearable mental anguish that rose to the level of severe emotional distress." Wallace has failed to state a claim of intentional infliction of emotional distress.

### D. Prima Facia Tort Claim

This court adopts the argument of Defendant that a claim for prima facia tort or intentional tort is not recognized in Pennsylvania; that the claim is encompassed by the other torts alleged in the complaint, and that Plaintiff cannot show that Defendant acted with intent to cause the reputational and emotional harm Wallace claims he suffered. (Doc. 25 at pp. 16-17.)

### E. Identity Theft Claim

Title 18 Pa. Cons. Stat. § 4120(a) provides that "[a] person commits the offense of identity theft if he possesses or uses, through any means, identifying information of another person without the consent of that other person to further any unlawful purpose." Title 42 Pa. Cons. Stat. § 8315 provides a private right of action for violations of 18 Pa. Cons. Stat. § 4120.

To be in violation of this statute, one must be in possession of identifying information of another without their consent and use that information to further an unlawful purpose. There is no evidence the Wallace's mug shot was "stolen." The mug shot was apparently obtained for police files and was part of the public record. The use of the mug shot by Defendant was not to further an illegal purpose or for financial gain. Thus, this claim also fails.

## V. Conclusion

For the reasons stated above, the motion to dismiss will be granted. In light of this dismissal, Wallace's request for injunctive relief will be denied. An appropriate order will be issued.

                                                    s/Sylvia H. Rambo
                                                  United States District Judge

Dated: January 18, 2013.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARCUS L. WALLACE,** **individually situated,** | : | **CIVIL NO. 1:12-CV-0872** |
| Plaintiff | : | |
| v. | : | |
| **MEDIANEWS GROUP, INC.,** | : | |
| Defendant | : | |

# **O R D E R**

For the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) Defendant's motion to dismiss is **GRANTED** (Doc. 20).

2) Plaintiff's request for injunctive relief (Doc. 6) is **DENIED**.

3) The Clerk of Court shall close the file.

4) It is certified that any appeal from this order will be deemed frivolous and not taken in good faith.

                                                                                     s/Sylvia H. Rambo
                                                                       United States District Judge

Dated: January 18, 2013.